**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CEREMONY OF ROSES ACQUISITION LLC, *Plaintiff* | §<br>§<br>§<br>§ | |
| v. | §<br>§ | Case No.  SA-26-CA-01704-XR |
| JOHN DOES 1-100, JANE DOES 1-100, XYZ COMPANY, *Defendants* | §<br>§<br>§<br>§ | |

**TEMPORARY RESTRAINING ORDER;**
**SEIZURE ORDER; AND ORDER TO SHOW CAUSE WHY A PRELIMINARY**
**INJUNCTION AND SEIZURE ORDER SHOULD NOT ISSUE**

Plaintiff Ceremony of Roses Acquisition LLC, which holds the exclusive license to sell country music artist Zach Bryan's merchandise, seeks an emergency temporary restraining order ("TRO"), preliminary injunction, and an *ex parte* seizure order barring Defendants "John Does 1–100, Jane Does 1–100, and XYZ Company" from selling counterfeit merchandise outside Zach Bryan's "With Heaven On Tour." ECF No. 4. After careful consideration, the motion (ECF No. 4) is **GRANTED**, with some modifications.

**BACKGROUND**

Zach Bryan (the "Artist") will be performing at The Alamodome in San Antonio, Texas on March 21, 2026. ECF No. 1 ¶ 13; *see also* ECF No. 6-1 (Tour Dates). His tour merchandise is made and sold by Plaintiff Ceremony of Roses, LLC, which has the exclusive right to sell Zach Bryan's official tour merchandise with trademarked designs using his name.[1] ECF No. 1 ¶¶ 6–9.

---

[1] The Artist has obtained Federal Trademark Registrations for his "ZACH BRYAN" trademark, Registration No. 7468555 for use in connection with International Class ("IC") 025 clothing, namely, t-shirts, shirts, and hooded sweatshirts; Registration No. 7541092 for use in connection with IC 041, entertainment, namely, live performances by a musical artist among other services; and Registration No. 7468545 for use in connection with IC 009, musical sound recordings, downloadable music sound recordings, audiovisual recordings, among other goods.

Plaintiff knows from prior concerts that bootleggers intend to sell unauthorized merchandise that infringes on the Artist's trademarks. *See* ECF No. 6, Decl. of Alan Sitchon ¶¶ 10–19; ECF Nos. 6-3, 6-4 (showing photographs of unauthorized Zach Bryan merchandise being sold outside of a concert in Tampa, Florida on March 14, 2026). Because the names of the bootleggers are unknown and they are unlikely to identify themselves at the concert, much less show up in court if identified and sued, they have been sued under fictitious names.

Plaintiff has submitted evidence showing that without an *ex parte* seizure order, any relief afforded in this case will be ineffective. *See* ECF No. 6, Sitchon Decl. (Plaintiff's Vice President of Tour); ECF No. 7, Decl. of Cara R. Burns (Plaintiff's Legal Counsel). To begin, bootleggers regularly ignore "cease and desist" orders and TROs when confronted at concerts. ECF No. 6, Sitchon Decl. ¶ 18; ECF No. 7, Burns Decl. ¶¶ 13,14. They provide an alias or refuse to identify themselves altogether or simply leave the area to resume sales elsewhere. *Id.* If the bootleggers are given prior notice of a seizure order, they are likely to transfer, hide, or destroy the unauthorized merchandise. ECF No. 6, Sitchon Decl. ¶ 21; ECF No. 7, Burns Decl. ¶ 8. Given that Plaintiff holds the exclusive right to sell the Artist's merchandise, bootleggers have no viable defense against their use of the Artist's Trademarks in their Infringing Merchandise and are unlikely to appear in Court. ECF No. 7, Burns Decl. ¶¶ 7, 15, 25.

In seeking multi-district relief for the duration of the Artist's tour, Plaintiff has also submitted evidence suggesting that bootleggers coordinated across tour locations. *See* ECF No. 6, Sitchon Decl. ¶¶ 14–23. For example, bootleggers often sell virtually identical merchandise, suggesting a common supply source. *Id.* ¶ 15. And, despite the hundreds of thousands of images of the Artist available on the internet,  the same images and designs—often similar to those in Plaintiff's in-house designs—repeatedly appear on infringing merchandise. *Id.* ¶ 16.

**DISCUSSION**

Section 32 of the Lanham Act creates a cause of action for infringement of registered marks and states in relevant part:

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

The Lanham Act was amended by The Trademark Counterfeiting Act of 1984 "to expressly authorize *ex parte* injunctions to combat fly-by-night counterfeiters, which some courts had begun to impose under their inherent equitable authority anyway." *Ceremony of Roses Acquisition LLC v. Does*, No. 4:26-CV-285 MAL, 2026 WL 626769, at \*1 (E.D. Mo. Mar. 5, 2026). "While the Lanham Act had always authorized courts to enjoin infringements of licensed trademarks 'according to the principles of equity[,]' 15 U.S.C. § 1116(a), Pub. L. 93–596, § 34 (1946) (original Lanham Act), the amended Act allows for *ex parte* orders to seize goods, records, counterfeit marks, and the means of making such marks. 15 U.S.C. § 1116(d)(1)(A); Pub. L. 100–667, § 1503 (1984 amendment)." *Id.*

Plaintiff seeks an *ex parte* TRO barring bootleggers from selling merchandise that infringes on its federally protected trademark rights ("Infringing Merchandise") at specific locations before, during and after the Artist's concerts and an order sanctioning the seizure of the bootleggers' counterfeit goods. ECF No. 4. The Court addresses each request in turn.

3

## I.    Request for Temporary Restraining Order

### A.    Legal Standard

Under Federal Rule of Civil Procedure 65, a court may grant a temporary restraining order *ex parte*. *Ex parte* restraining orders should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b).

The factors that govern an application for a temporary restraining order are the same as those that govern a request for preliminary injunction. *Hill v. Green Cnty. Sch. Dist.*, 848 F. Supp. 697, 703 (S.D. Miss. 1994) (citing *Canal Authority of State of Fl. v. Callaway*, 489 F.2d 567 (5th Cir. 1974)). Under well-settled Fifth Circuit precedent, a preliminary injunction requires the movant to show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985).

Procedurally, when a party also requests a preliminary injunction, Federal Rule of Civil Procedure 65(a) allows the Court to consolidate a hearing on a motion for a preliminary injunction with a trial on the merits of the complaint. Rule 65(c) allows the Court to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Included in the Court's discretion when setting a security bond is the ability to "require no security at all." *A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)).

**B.      Analysis**

**1.      Plaintiff is likely to succeed on the merits.**

Zach Bryan's trademarks are likely to be infringed because the bootleggers use similar marks on similar products that are likely to create confusion. Zach Bryan holds trademarks registered with the Patent and Trademark Office. ECF No. 1 ¶¶ 7–8 (listing registrations licensed by Ceremony of Roses). Plaintiff is the exclusive licensee of the Artist and the sole merchandiser for Authorized Tour Merchandise sold during his tour. ECF No. 6, Sitchon Decl. ¶ 3. But unidentified bootleggers have used, and will likely continue to use, counterfeit marks in the production and sale of their unauthorized merchandise around Zach Bryan concerts. *Id.* ¶¶ 13–18. And based on the materials submitted to the Court, these designs strongly resemble the registered marks such that consumers would likely confuse the "bootleg" merchandise with authorized items. *Id.* ¶¶ 15–16. Nothing suggests these unidentified bootleggers have any right to use the marks in the manner Plaintiff expects.

Thus, Plaintiff has demonstrated a strong likelihood of success on its trademark-infringement claim.

**2.** **Plaintiff will suffer irreparable harm if an injunction is not granted.**

Second, Plaintiff will likely suffer irreparable harm without a TRO. The Lanham Act provides that "upon a finding of a likelihood of success on the merits," a plaintiff "shall be entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a).

"Even without the presumption, there is still likely irreparable harm at stake. Consumers would be misled by the knock-off goods, resulting in both lost sales (which damages could not remedy given the bootleggers' evasive tactics) and reputational harm to Plaintiff regarding the quality of their merchandise." *Ceremony of Roses*, 2026 WL 626769, at *3; *see also* ECF No. 6, Sitchon Decl. ¶ 19. Moreover, traditional legal remedies are impossible to calculate or collect in these cases because these sellers appear only at the concerts, operate without identification or record-keeping, and are likely to destroy Infringing Merchandise and related evidence after receiving notice of these proceedings. *See* ECF No. 6, Sitchon Decl. ¶¶ 20–21, 23.

**3.** **The balance of the equities favors an injunction.**

"Third, a TRO is unlikely to result in substantial harm to anyone. Ceremony of Roses has the exclusive right to use these trademarks, so any defendant subject to the seizure and restraining orders would necessarily be liable for trademark infringement anyway." *Ceremony of Roses*, 2026 WL 626769, at *3; ECF No. 7, Burns Decl. ¶ 16. Further, any defendant who may claim to be able to lawfully sell the Artist's goods will have a chance to present that defense at a preliminary injunction hearing.

**4.** **An injunction would serve the public interest.**

"Fourth and last, a TRO serves the public interest by preventing consumer confusion and combating deceptive behavior that undermines our nation's system of intellectual property protections." *Ceremony of Roses*, 2026 WL 626769, at *3.

6

**5.** **Plaintiff is entitled to *ex parte* relief.**

Plaintiff has satisfied the traditional principles governing preliminary relief and the additional requirements applicable to requests for *ex parte* relief under FED. R. CIV. P. 65(b).

As Plaintiff explained, it is nearly impossible to identify bootleggers until they have already started infringing upon the trademarks at issue. ECF No. 7, Burns Decl. ¶¶ 13–15. By then, Plaintiff already will have suffered irreparable harm. Ceremony of Roses would lose "substantial" merchandising income, *id.* ¶ 11, which almost certainly would not be recovered from the offending fly-by-night bootleggers. Therefore, Plaintiff stands to suffer immediate and irreparable injuries if notice is required, and its counsel has certified in writing that notice cannot be given under these circumstances. *See id.* ¶ 16.

## II.    Seizure Order

### A.    Legal Standard

*Ex parte* seizure orders are not automatic. The Act imposes several requirements on an applicant. To obtain an *ex parte* seizure order, an applicant must give notice of its application to the United States attorney for the judicial district in which such order is sought. 15 U.S.C. § 1116(d)(2). An applicant must also base their application on an affidavit or verified complaint, *id.* § (d)(3), and include a description of the matter to be seized and its location, the seizure date, the security required, and the post-seizure hearing date, *id.* § (d)(5).

A court may issue a seizure order if it clearly appears from specific facts that "(i) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of Section 32 of [the Lanham] Act (15 U.S.C. § 1114); (ii) the applicant has not publicized the requested seizure; (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of

goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the matter to be seized will be located at the place identified in the application; (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the counterfeiter; and (vii) the person against whom seizure would be ordered ... would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." 15 U.S.C. § 1116(d)(4)(B).

### B.    Analysis

Plaintiff has satisfied the requirements for an *ex parte* seizure order under 15 U.S.C. § 1116. It has notified the acting U.S Attorney for the Western District of Texas, *see* ECF No. 7 ¶ 27 and submitted an affidavit from Alan Sitchon, Vice President of Tour for Ceremony of Roses, *see* ECF No. 6; and a proposed order containing the information the Court needs to issue a seizure order under § 1116(d)(5), *see* ECF No. 4-1. Plaintiff will provide security to compensate any wrongful seizures, *see* ECF No. 4-1 (proposing an order requiring a bond), and presented "specific facts" allowing the Court to clearly find that:

(i)     "an order other than an *ex parte* seizure order is not adequate to achieve the purposes of section 1114 of this title" because Plaintiff has no other legal remedy that would prevent unauthorized sales without allowing bootleggers to conceal infringing goods and sell them later or otherwise seize the goods sold by unknown bootleggers who intentionally and in bad faith keep their identities secret, ECF No. 6, Sitchon Decl. ¶ 21; ECF No. 7, Burns Decl. ¶ 8;

(ii)    "the applicant has not publicized the requested seizure";

(iii)   the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services" because Plaintiff possesses an exclusive right to use Zach Bryan's marks, ECF No. 1 ¶¶ 6–9; ECF No. 7, Burns Decl. ¶ 16; and bootleggers are likely to sell unauthorized Zach Bryan merchandise at the San Antonio concert;

(iv)    "an immediate and irreparable injury will occur if such seizure is not ordered" because unauthorized sales of lower-quality goods harms the reputation and value

8

of Zach-Bryan-branded marks and because of the unique nature of how bootleggers do business, which is to sell merchandise but not identify themselves or show up in court if they are caught. Having an *ex parte* order that allows Plaintiff to seize the bootlegged goods is the most Plaintiff expects to recover from these unknown entities, ECF No. 6, Sitchon Decl. ¶ 18; ECF No. 7, Burns Decl. ¶¶ 13,14 (when confronted, bootleggers "refuse to identify themselves or provide aliases, or simply flee the area only to resume sales elsewhere"); ECF No. 7, Burns Decl. ¶¶ 7, 15, 25 (bootleggers also do not show up in court);

(v) "the matter to be seized will be located at the place identified in the application," which is the 3-mile radius surrounding The Alamodome in San Antonio, Texas (excluding any brick-and-mortar retailers), as this would be where bootleggers would logically operate to benefit from attendance at, and association with, the concert in that venue, ECF No. 4-1 at 4;

(vi) "the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application" because bootleggers have no right to sell infringing merchandise, which they could move to another location and offer for sale again if not confiscated, and because any inadvertent seizure of merchandise that is not infringing may be remedied in a subsequent hearing in this case; ECF No. 6, Sitchon Decl. ¶ 21; ECF No. 7, Burns Decl. ¶¶ 7, 8, 15, 25; and

(vii) "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person" because bootleggers in similar circumstances have relocated or "disappeared" when approached and are difficult to identify at subsequent shows. ECF No. 6, Sitchon Decl. ¶ 21; ECF No. 7, Burns Decl. ¶ 8.

15 U.S.C. § 1116(d)(4)(B).

Based on Ceremony of Roses' briefing and supporting declarations, the Court will grant Plaintiff's *ex parte* request for a seizure order under 15 U.S.C. § 1116.

## III.    Scope of Relief

Once the Defendants have been served at the concert in San Antonio, this Court will acquire personal jurisdiction over them. FED. R. CIV. P. 4. Given Plaintiff's evidence that bootleggers are acting in concert, the Court will consider issuing a broader order at a preliminary injunction hearing set for April 7, 2026, enjoining all bootlegging activities and permitting seizure of counterfeit

goods during the entirety of the Artist's tour under 15 U.S.C. § 1116(a), which specifically provides for enforcement of this Court's orders in other districts.[2] Without the proposed seizure order, Plaintiff will be forced to file separate civil actions throughout the United States. Moreover, should any Defendant appear, Plaintiff has represented that it will waive any objections to venue and transfer the action if requested. *See* ECF No. 5 at 24.

The Court observes that the Artist is scheduled to perform in Baton Rouge, Louisiana on March 28, 2026—before the preliminary injunction hearing in this matter. To ensure that full relief is available to Plaintiff, the Court will entertain a motion to extend the seizure order to the Baton Rouge concert, to be filed by no later than March 25, 2026. The motion should demonstrate that the goods seized in San Antonio concert evince concerted action by the bootleggers across the tour (i.e., that they are substantially similar to the counterfeit merchandise identified at the March 14, 2026 concert in Tampa, *see* ECF Nos. 6-3, 6-4).

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for an *ex parte* temporary restraining order and seizure order (ECF No. 4) is **GRANTED**, and its request for an *ex parte* hearing (ECF No. 10) is **MOOT**.

1.    It is **ORDERED** that Defendants John Does 1-100, Jane Does 1-100 and XYZ Company their true identities being unknown (collectively "Defendants") their agents, servants, employees, attorneys, successors and assigns and all persons, firms and corporations acting in concert with them, and each of them, are **ENJOINED** from manufacturing, distributing, selling or holding for sale, any clothing, jewelry, photographs, posters and other merchandise (collectively, the "Infringing Merchandise") bearing the federally registered trademarks, service marks, likenesses, logos or other indicia of the Artist **"ZACH BRYAN"** (collectively, the "Artist's Trademarks"), as specified in the Complaint. *See* ECF No. 1 ¶¶ 7–8.

---

[2] "Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found." 15 U.S.C. § 1116(a).

2.      It is **FURTHER ORDERED** that federal, state, and local law enforcement officers[3] may **SEIZE AND IMPOUND** any Infringing Merchandise that is found for sale:

    a.   within 3 hours of the beginning or end of Zach Bryan's March 21, 2026, concert in San Antonio, Texas; and

    b.   within 3 miles of The Alamodome in San Antonio, Texas.

These law enforcement officers are permitted to seize merchandise only within the time periods and at the locations described.

3.      It is **FURTHER ORDERED** that service of a copy of this Order together with the Complaint upon which it is based, be made upon the Defendants by such law enforcement officers at the time of the seizure provided herein is effected and that such service shall be deemed good and sufficient.

4.      It is **FURTHER ORDERED** that the process server shall offer a receipt to each person from whom Infringing Merchandise is seized and that Plaintiff shall be deemed substitute custodian for all Infringing Merchandise seized.

5.      It is **FURTHER ORDERED** that each and every Defendant served with a copy of this Order promptly, courteously and peaceably identify himself or herself to the aforementioned process server and that the process server or agents for Plaintiff be allowed to photograph, video tape or otherwise identify the Defendant. Plaintiff shall immediately reveal any identified Defendants to the Court.

6.      It is **ORDERED** that Defendants appear at an in-person hearing on **April 7, 2026**, at **3:00 p.m.** in Courtroom H, United States Courthouse, 262 West Nueva, San Antonio, Texas 78207, to show cause why a  preliminary injunction under Federal Rules of Civil Procedure 65, the Lanham Act 15 U.S.C. §1051 *et seq.*, and the All Writs Act should not be entered  to enjoin the Defendants from manufacturing, distributing, selling or holding for sale, any clothing, jewelry, photographs, posters and other merchandise (collectively, the "Infringing Merchandise") and to seize the same bearing the federally registered trademarks, service marks, likenesses, logos or other indicia of the Artist **"ZACH BRYAN"** (collectively, the "Artist's Trademarks").

7.      It is **FURTHER ORDERED** that Plaintiff shall attend the **April 7, 2026** hearing to discuss any potential modifications to this Order and shall deliver all seized merchandise to the custody of the Court and bring any other evidence obtained that would support the full length and scope of the relief it has requested. The Court will consolidate a trial of the case on the merits with

---

[3] Plaintiff requested to use off-duty officers "and any person acting under their supervision" to execute the anticipated seizures. ECF No. 4-1 at 4. Because 15 U.S.C. § 1116(d)(9) requires a "Federal law enforcement officer" or "State or local law enforcement officer" to execute seizures, non-officers cannot lawfully seize merchandise under this Order. *See Ceremony of Roses*, 2026 WL 626769, at *4 n.1. The Court is not aware of any binding authority requiring the officers to be on-duty at the time of seizure, so Plaintiff may use off-duty officers.

the hearing of the application for preliminary injunction. *See* FED. R. CIV. P. 65(a); *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 704 (5th Cir. 1985).

8.      It is **FURTHER ORDERED** that Defendants may submit their objections to this Court or apply to modify or dissolve this Order on two days' notice. *See* FED. R. CIV. P. 65(b)(4).

9.      It is **FURTHER ORDERED** that Defendants' responsive papers, if any, shall be filed and served upon Plaintiff's counsel by **March 30, 2026**. Any reply shall be filed by Plaintiff and served upon each appearing Defendant or his/her counsel on or before **April 6, 2026.** Plaintiff must provide copies of all other filed pleadings at the request of any identified Defendant.

10.     It is **FURTHER ORDERED** that Plaintiff shall post bond in the amount of $5,000 with the Clerk of Court, by no later than **March 27, 2026**, to secure any costs and damages as may be suffered by a wrongfully restrained party.

11.     It is **FURTHER ORDERED** that this temporary restraining order shall remain in effect until **April 2, 2026** at **6:00 p.m.** unless a further order of the Court dissolves or extends it. *See* FED. R. CIV. P. 65(b)(2). Plaintiff shall file a motion to extend the temporary restraining order by no later than **April 1, 2026.**

12.     It is **FINALLY ORDERED** that, should Plaintiff wish to extend the *seizure* order to the **Baton Rouge concert**, it may file a motion to that effect by **March 25, 2026**, supported by evidence of coordinated activity by the bootleggers based on the goods seized outside of the San Antonio concert.

It is so **ORDERED**.

**SIGNED** March 20, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE